UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW KINDT, on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; SAMSUNG SDI CO., LTD.; LP DISPLAYS INTERNATIONAL, LTD. (formerly LG PHILIPS DISPLAYS); MT PICTURE DISPLAY CO., LTD.; TOSHIBA CORP.; TOSHIBA AMERICA, INC.,<br><br>*Defendants.* | 07-cv-10322-GBD |

## MEMORANDUM OF TOSHIBA AMERICA INC. IN SUPPORT OF ITS MOTION TO ADJOURN THE INITIAL PRETRIAL CONFERENCE PENDING A DECISION OF THE MDL PANEL

On January 30, 2008, the Judicial Panel on Multidistrict Litigation ("MDL Panel") heard oral argument on a motion to transfer numerous related civil actions — including this one — to a single district for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. A decision from the MDL Panel is expected within a few weeks.

Pursuant to this Court's order of November 20, 2007, an initial pretrial conference is scheduled in this action for February 14, 2008. Proceeding with the scheduled pretrial conference would be an inefficient use of judicial resources given that the MDL Panel may soon transfer this action to another district for pretrial proceedings. Even if the MDL Panel were to transfer the other related actions to this district, another pretrial conference would undoubtedly need to be held to establish a case management plan and scheduling order for the approximately

30-plus cases that will be subject to the MDL Panel's transfer order. Thus, irrespective of the decision of the MDL Panel, adjournment of the February 14, 2008 pretrial conference is warranted. This motion is Toshiba America Inc's ("TAI") first request for adjournment of this conference.

## BACKGROUND

This action was commenced by Andrew Kindt on November 13, 2007. Ex. 1. By his complaint, Kindt alleges that he purchased a computer monitor containing a cathode ray tube ("CRT") and that he was injured as a result of a purported conspiracy to fix higher prices for CRTs used in certain consumer products. Kindt further alleges that the defendants' activity violates both federal and state antitrust law.

By order dated November 20, 2007, this Court entered an order that, among other things, set February 14, 2008 as the date of the initial pretrial conference. Ex. 2.

On November 29, 2007, a motion was filed with the MDL Panel seeking transfer of all actions asserting claims arising from purported anticompetitive conduct by CRT manufacturers to the Northern District of California for pretrial proceedings. Ex. 3. Approximately 30 such actions have been filed in district courts across the United States. Ex. 4 (schedule of CRT-related actions).

On December 17, 2007, Kindt filed a response to the transfer motion. Ex. 5. In his response, Kindt argued that all CRT-related actions should be transferred to this district for pretrial proceedings.

On January 30, 2008, the MDL Panel heard oral argument on the motion to transfer. A decision on that motion is expected within a few weeks.

## **ARGUMENT**

Although the filing of a motion to transfer pursuant to 28 U.S.C. § 1407 "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court" (MDL Panel Rule 1.5), a district court possesses the authority to either stay its proceedings pending the resolution of a motion to transfer or otherwise refer matters to the transferee court for appropriate disposition. *See Med. Soc'y of the State of New York v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 91 (S.D.N.Y. 2001) ("it is equally within this Court's power to decline to decide a motion which challenges this Court's subject matter jurisdiction while awaiting the MDL Panel's decision on transfer") (citations omitted); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) ("Courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case."). The Second Circuit has recognized that "[c]onsistency as well as economy is . . . served" when matters are transferred to a single court for resolution per 28 U.S.C. § 1407. *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990).

Here, all parties who filed papers before the MDL Panel agree that transfer to a single district is appropriate. The only debate concerns the appropriate transferee court. Because transfer to a single district is inevitable, proceeding with an initial pretrial conference at this time would constitute a waste of judicial resources. As indicated by the Court's order of November 20, 2007, one of the purposes of the conference is to establish a case management plan and scheduling order. If this action is transferred to another district, then whatever case management plan and scheduling order is set by the Court will be superseded by the MDL Panel's transfer order. Alternatively, if the MDL Panel transfers all of the CRT-related cases to this district, then a new case management plan and scheduling order will need to be set to account for the

approximately 30-plus CRT-related cases.  By its November 20, 2007 order, the Court also directed parties to be prepared to address at the conference "the factual and legal bases for their claims and defenses, any issue as to subject matter jurisdiction, and any other issue relevant to case management."  Again, discussion of these topics would be unnecessary in the event that this action is transferred to another district for pretrial proceedings or, alternatively, would have to reoccur in the event that the other CRT-related actions are transferred to this district.

Counsel for Toshiba America Inc. has contacted counsel for Kindt concerning this motion.  Counsel for Kindt state that they take no position concerning this motion.

For these reasons, the Court should grant this motion and adjourn the initial pretrial conference pending disposition of the motion for transfer currently under consideration by the MDL Panel.

Dated:  February 7, 2008                          Respectfully submitted,

                                                  **WHITE & CASE**LLP

                                        By:    s/ Christopher M. Curran
                                               Christopher M. Curran (CC-4779)
                                               George L. Paul
                                               Lucius B. Lau
                                               701 Thirteenth St., N.W.
                                               Washington, D.C.  20005
                                               tel.: (202) 626-3600
                                               fax: (202) 639-9355

                                               *Counsel to Toshiba America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of February, 2008, I caused to be served a copy of "MEMORANDUM OF TOSHIBA AMERICA INC. IN SUPPORT OF ITS MOTION TO ADJOURN THE INITIAL PRETRIAL CONFERENCE PENDING A DECISION OF THE MDL PANEL" on the following entities by first-class mail:

Christopher Lovell, Esq. (CL-2595)
Craig M. Essenmacher, Esq.
Keith Essenmacher, Esq.
Imtiaz A. Siddiqui, Esq.
500 Fifth Avenue, Floor 58
New York, New York 10110
(212) 608-1900

*Counsel to Andrew Kindt*


Matsushita Electric Industrial Co., Ltd.
1006 Kadoma, Kadoma City, Osaka 571-8501, Japan


Samsung SDI Co., Ltd.
15 – 18th Floor
Samsung Life Insurance Bldg. 150 Taepyungro 2-Ga
Jung-Gu, Seoul, South Korea


LP Displays International Ltd.
6th Floor, Ing Tower
308 Des Voeux Road Central, Sheung Wan
Hong Kong


MT Picture Display Co., Ltd.
Osaka, Japan


Toshiba Corp.
1-1, Shibaura 1-Chome, Minato-Ku, Tokyo 105-8001, Japan

Lucius K. Lau

EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ANDREW KINDT, on behalf of himself
and all others similarly situated,

                  Plaintiff,

  -against-

MATSUSHITA ELECTRIC INDUSTRIAL
CO, LTD.; SAMSUNG SDI CO., LTD.; LP
DISPLAYS INTERNATIONAL, LTD.
(formerly LG PHILIPS DISPLAYS); MT
PICTURE DISPLAY CO, LTD.; TOSHIBA
CORP.; TOSHIBA AMERICA, INC.,

                  Defendants.
-------------------------------------------------------X

**CLASS ACTION COMPLAINT**

**07 CV 10322**

**JUDGE DANIELS**

**JURY TRIAL DEMANDED**

RECEIVED
NOV 19 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, ANDREW KINDT, a resident of Macomb County, Michigan, by and through his attorneys, brings this civil action for damages and injunctive relief, on behalf of himself and all others similarly situated against the above named Defendants, demanding a trial by jury, complains and alleges as follows:

## DEFINITIONS

1.    Cathode Ray Tube ("CRT") is a glass tube used to manufacture televisions and computer monitors.

2.    As used herein, the term "Class Period" means the time period January 1, 2003 to the present.

3.    The "Indirect Purchaser States" are Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

4.    The "Consumer Fraud States" Alaska, Arkansas, California, District of Columbia, Florida, Idaho, Maine, Montana, Nebraska, Nevada, New York, New Hampshire, New Mexico, North Carolina, Utah, Vermont, West Virginia.

## JURISDICTION AND VENUE

5.    The Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 15 and 26, and pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367. This Court has personal jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused injury to persons and entities residing in, located in, or doing business in this District and throughout the United States. For the state law claims, the court also has jurisdiction pursuant to 28 USC §1332(d), in that this is a class action in which the matter of controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and which some members of the proposed class are citizens of a different state than of the Defendants.

6.    Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing business, or are found or transact business in this district and/or the claims arose in this district.

## THE PARTIES

**A.    Plaintiff**

7.    Plaintiff ANDREW KINDT ("Plaintiff"), a Michigan resident of Macomb County, is an individual who purchased a computer monitor with a CRT during the Class Period for end use and not for resale. Plaintiff was injured as a result of Defendants' illegal conduct.

2

**B.**    **Defendants**

8.    Defendant MATSUSHITA ELECTRIC INDUSTRIAL, LTD. ("Matsushita") is located at 1006, Kadoma, Kadoma City, Osaka 571-8501 Japan. During the Class Period, Matsushita manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

9.    Defendant SAMSUNG SDI CO., LTD ("Samsung SDI") is located at on the 15 – 18th Floor, Samsung Life Insurance Building.150 Taepyungro 2-ga, Jung-gu, Seoul, South Korea.  During the Class Period, Samsung SDI manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

10.    Defendant LP DISPLAYS INTERNATIONAL, LTD. (formerly LG.Philips Displays) ("LP Displays") is located on the 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. During the Class Period, LP Displays manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

11.    Defendant TOSHIBA CORP. ("Toshiba") is located at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba manufactured and sold CRT to television and monitor manufacturers, who then sold to consumers throughout the United States.

12.    Defendant TOSHIBA AMERICA, INC. ("Toshiba America") is located at 1251 Avenue of the Americas, New York, NY. During the Class Period, Toshiba America manufactured and sold CRT to television and monitor manufacturers, who then sold to consumers throughout the United States.

13.    Defendant MT PICTURE DISPLAY CO., LTD. ("MT Picture Display"), located in Osaka, Japan, is a joint venture between defendants Toshiba and Matsushita. During the Class

Period, MT Picture Display manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

## CO-CONSPIRATORS

14.    Defendant John Does 1-100 are presently not ascertainable by Plaintiff and are in the exclusive knowledge of the Defendants.  The Complaint in this action will be amended when their true identities are known.

15.    The acts alleged in this Complaint have been completed by Defendants and their co-conspirators, or were authorized, ordered or completed by their respective officers, employees or representatives while actively engaged in the management of Defendants' companies.

16.    Each of the Defendants named herein acted as an agent or trustee with respect to the acts, violations and common course of conduct alleged herein.

17.    Defendants conduct business throughout the United States including the State of New York and they have purposely availed themselves of the laws of the Indirect Purchaser States and Consumer Fraud States as defined herein.

## PLAINTIFF'S INJURY

18.    Plaintiff purchased a computer monitor containing a CRT during the Class Period. Plaintiff paid a supra competitive price for the computer monitor based upon the conspiracy between the Defendants to raise and fix prices of CRTs in the United States.

## RELEVANT PRODUCT AND GEOGRAPHIC MARKET

19.    To the extent necessary, the relevant product market is the market for CRT televisions and CRT computer monitors that were sold to consumers in the United States. The relevant geographic market is the entire United States, and/or the Indirect Purchaser States and/or Consumer Fraud States (as defined above).  At all relevant times, including the present, all

Defendants' collectively hold a vast majority of the market share in the relevant product and geographic markets.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action on behalf of himself, and all others similarly situated. Plaintiff seeks to represent the following class, defined as:

> **All persons and entities residing in the United States who, from January 1, 2003 to the present, purchased Cathode Ray Tube consumer items in the United States for their own use and not for resale. Excluded from the Class are: governmental entities, any judge, justice or judicial officer presiding over this matter and the members of his or her immediate family, Defendants and their co-conspirators, along with their respective parents, subsidiaries and/or affiliates. Also excluded from this Class are the legal representatives, heirs, successors and attorneys for any excluded person or entity, and any person acting on behalf of any excluded person or entity.**

21.    All Class members are hereinafter referred to as the "Class", subject to additional information obtained through further investigation and discovery.

22.    This action has been brought and may properly be maintained as a class action, pursuant to the provisions of the Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Class including from a retailer in the United States and/or Indirect Purchaser States, or the Consumer Fraud States during the Class Period:

a.    The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the United States and/or the Indirect Purchaser States and/or the Consumer Fraud States. The precise number of Class members is unknown to Plaintiff. The true number of Class members is likely to be known by Defendants, however, and thus, Class members may be notified of the pendency of this action by published notice or other alternative means. Throughout the period of time

covered by this Complaint, Defendants and their co-conspirators engaged in the business

of marketing and selling CRTs throughout the United States and throughout the Indirect

Purchaser States and Consumer Fraud States.

b.    Common questions of law and fact exist as to all members of the Class

and predominate over any questions affecting solely individual members of the Class.

Among the questions of law and fact common to the Class are:

i.    whether Defendants combined or conspired to fix, raise, maintain,

manipulate or stabilize the prices of, or allocate the market for, sales of CRTs;

ii.    whether the combination or conspiracy caused CRT prices to be higher

than they would have been absent the Defendants' conduct;

iii.    the time period of Defendants' combination or conspiracy

iv.    whether the Defendants' alleged conduct caused injury to the business

or property of Plaintiff and the members of the Class;

v.    the appropriate measure of damages suffered by the Class;

vi.    whether Defendants' conduct violates Section 1 of the Sherman Act

(15 U.S.C. § 1), as alleged in Count I;

vii.    Whether the alleged conduct violated the Indirect Purchaser States'

laws concerning antitrust violations as alleged in Count II of this

Complaint;

viii.    whether Defendants' conduct violates the unfair competition and

consumer protection laws of the Consumer Protection States as alleged below

in Count III;

ix.    Whether Plaintiff and the Class have a claim for unjust enrichment;

    x.    Whether injunctive relief is necessary to prevent future violations;

    xi.    the appropriate nature of class-wide equitable relief.

    c.    Plaintiff's claims are typical of the claims of the other members of the Class it seeks to represent. Defendants' illegal and inequitable methods, acts, and trade practices have targeted and affected all members of the Class in a similar manner. Furthermore, Plaintiff and all members of the Class sustained monetary injury arising out of Defendants' wrongful conduct.

    d.    Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel who is experienced in class action and antitrust litigation. Plaintiff has no interests which are adverse to or conflict with those of other members of the Class.

    e.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

    f.    The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be

unobjectionable. The damages suffered by the individual Class members may be relatively small; and therefore, the expense and burden of individual litigation make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## FACTUAL ALLEGATIONS

23.    Plaintiff's claims arise from the Defendants' manipulation of the market for CRTs in the United States.

24.    CRTs are components of certain televisions and computer monitors that allow the device to display images upon the screen.

25.    The cathode is a heated filament that is present in a vacuum that is created in a glass tube. The ray is a stream of electrons that is naturally emitted from a heated cathode in a vacuum. The beam of electrons is focused on the television or monitor screen that contains phosphors. The phosphors emit light when exposed to radiation, which causes the images on the screen to appear.

26.    The CRT market in the United States is very large. According to iSuppli's 2005Q4 Television Systems Market Tracker, over 29,000,000 televisions were projected to be shipped to North America. According to the same report, pf those television sets, 50% were projected to be CRT televisions.

27.    LP Displays states on their website that it shipped almost 50 million CRTs in 2006 giving them a 27% market share worldwide.

28.    Even though the market for CRT television and computer screens is very large, the market has been and continues to steadily decline in favor of other technologies such as Liquid Crystal Display ("LCD"), projection, and plasma screens. iSuppli Corporation predicts that, by 2008, CRT screen shipments will be only 23% of the total television shipments in North America

while LCD screen shipments will comprise 50% of the total shipments and overtake CRT screen shipments as the dominant screen technology for new televisions in North America.

29.    In a November 9, 2007 article entitled, "Matsushita, Samsung's SDI Operations Searched By Antitrust Regulators" posted on the CBS Market Watch website, it was stated that "[t]he probe into Matsushita and Samsung comes after the European Commission Thursday staged its own inspections of offices of unidentified CRT manufacturers. The Commission has reason to believe the companies may have colluded in fixing prices, the regulator said in a press release. It didn't name the companies in question."

30.    The November 8, 2007 Associated Press article entitled "Authorities Investigate Matsushita Amid Reports Of Price-fixing With Other Asian Makers" stated "Japan's antitrust officials searched a subsidiary of Matsushita Electric Industrial Co. on suspicion of forming an international cartel to fix prices for cathode-ray tubes for television, an official and media reports said Friday." The article further states that "Japan's Fair Trade Commission conducted an on-sight inspection of MT Picture Display Thursday, said Akira Kadota, a spokesman for Matsushita, the Osaka-based maker of Panasonic-brand products."

31.    A November 9, 2007 article entitled "Samsung SDI Probed For Alleged Price Fixing" stated "South Korea's anti-trust watchdog has launched a probe into Samsung SDI as part of an international investigation into alleged price-fixing, officials said Friday." The article further reported that "[t]he Fair Trade Commission is investigating allegations that Samsung SDI colluded with foreign rivals to fix the price of CRTs for television." The article also stated that "[t]he European Commission also confirmed Thursday that its officials had carried out unannounced inspections at CRT manufacturers over suspected cartel activity. Authorities in the United States

9

were also involved in the investigation, according to Japan's Nikkei business daily. CRT

manufacturers are suspected of operating an international cartel since 2005 or earlier, it said."

32.    A November 9, 2007 Financial Times article entitled "Antitrust Authorities Raid CRT

Manufacturers" reported "[c]ompetition authorities on three continents are investigating a group of

Asian electronics makers including Japan's Matsushita and South Korea's Samsung on suspicion of

price-fixing in the shrinking market for cathode-ray tubes (CRTs)." The article further stated that

"Matsushita, which sells under the Panasonic and National brands, confirmed on Friday that Japan's

Fair Trade Commission had raided the Osaka offices of its CRT subsidiary, MT Picture Display.

Samsung confirmed that South Korean authorities were probing its CRT business. Domestic rival LP

Displays, formerly LG.Philips Displays, was also visited by investigators, Bloomberg reported." The

article goes on to report that "[t]he European Commission said in a statement that it was inspecting

unnamed CRT makers. 'The Commission has reason to believe that the companies concerned may

have violated EC Treaty rules on cartels and restrictive business practices,' it said."

33.    In a November 9, 2007 Bloomberg article entitled "EU, Japan Raid Cathode-Ray

Tube Makers in Cartel Case (Update3)," it was reported that "[t]he commission has reason to believe

that the companies concerned may have violated" EU rules against price-fixing, sharing markets or

exchanging market information, the European Commission said in the statement. The companies

have two months to respond."

## DEFENDANTS' ILLEGAL CONDUCT

34.    The market for CRTs is complex and global. Manufacturers produce the CRTs

and then multiple other manufacturers place the CRT in a television or computer monitor for

resale to consumers.

35.    Defendants own a majority of the market share for CRTs that is used in televisions and computer monitors.

36.    The concentration of market participants in the CRT market, the declining CRT share of the total market for television and computer screens, and the higher price of other technologies such as LCD screens have given Defendants the incentive to conspire and collude to fix higher prices for CRTs used in these products.

37.    The Defendants have conspired and colluded to artificially raise the price of CRT to the consumer public, by means of illegal contracts, agreements, or secret negotiations.

38.    All of this was done to the detriment of the consumer.

39.    The Defendant did not disclose any information regarding these collusion or conspiracy agreements and had corporate policies to prohibit the dissemination of this information.

## FRAUDULENT CONCEALMENT

40.    The running of any statutes of limitations has been suspended with respect to any claims which the Plaintiff and other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged herein.

41.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statues of limitations otherwise applicable to the allegations herein have been tolled.

11

<u>COUNT I</u>

<u>VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT AND SECTION 4
OF THE CLAYTON ACT</u>

42.    Plaintiff re-alleges and incorporates by reference all of the allegations of this

Complaint with the same force and effect as if fully restated herein.

43.    Defendants and the un-named conspirators entered into and engaged in a contract,

combination, or conspiracy in an unreasonable restraint of trade in violation of the Section 1 of

the Sherman Act and Section 4 of the Clayton Act.

44.    The contract, combination, or conspiracy alleged herein has resulted in an

agreement or concerted action among the Defendants and their un-named conspirators whereby

as a result of these actions prices charged for consumer products containing CRTs were fixed,

maintained, and standardized.  The alleged contract, combination, or conspiracy is a per se

violation of federal antitrust laws and is at a minimum an unreasonable and unlawful restraint of

trade.

45.    As result of defendants' unlawful conduct, Plaintiff has suffered damage by

paying supra-competitive prices that they would not have had to incur but for the unlawful

conduct of defendants as alleged herein.

46.    The Plaintiff requests that declaratory and injunctive relief be granted to them to

eliminate the problem of this price fixing. If injunctive and declaratory relief is not granted, the

Plaintiff fears that this illegal scheme will continue and damage the Plaintiff further.

47.    A monetary relief shall only compensate the past wrong and will do nothing to

stop the ongoing and forward progress of this illegal scheme to fix prices in CRT markets.

## COUNT II

### Violation of State Antitrust Statutes

48.    Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

49.    Defendant's intentional and purposeful anti-competitive acts that are described above including but not limited to acts of collusion to set prices and the actual act of price fixing itself was intended to and did cause Plaintiff to pay supra-competitive prices for CRT prices charged for consumer products containing CRTs in the Indirect Purchaser States.

50.    Defendants' monopolistic and anticompetitive acts as described above are in violation of the following state antitrust statutes:

51.    Defendants have violated Arizona Revised Statutes § 44-1403.

52.    Defendants have violated California Business & Professions Code § 16700, *et. seq.*

53.    Defendants have violated District of Columbia Code § 28-4501, *et seq.*

54.    Defendants have violated Florida Statutes § 542.19.

55.    Defendants have violated Iowa Code § 553.5.

56.    Defendants have violated Kansas Statutes § 50-101.

57.    Defendants have violated Maine Revised Statutes, Title 10 § 1102.

58.    Defendants have violated Michigan Compiled Laws § 445.771, *et seq.*

59.    Defendants have violated Minnesota Statutes § 325D.51, *et seq.*

60.    Defendants have violated Mississippi Code § 75-21-1, *et seq.*

61.    Defendants have violated Nevada Revised Statutes § 598A.060.

62.    Defendants have violated New Jersey Statutes § 56:9-4.

13

63.    Defendants have violated New Mexico Statutes § 57-1-2.

64.    Defendants have violated North Carolina General Statutes § 75-2.1.

65.    Defendants have violated North Dakota Century Code § 51-08.1-03.

66.    Defendants have violated South Dakota Codified Laws § 37-1-3.2.

67.    Defendants have violated Tennessee Code § 47-25-101, *et. seq.*

68.    Defendants have violated Vermont Statutes, Title 9, § 2453.

69.    Defendants have violated West Virginia Code § 47-18-4.

70.    Defendants have violated Wisconsin Statutes § 133.03.

71.    Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.  Plaintiff and the Class seek treble damages pursuant to the Indirect Purchaser States antitrust laws as stated above where they are allowed by law.

72.    Defendants' willful and unlawful conduct allow Plaintiff and the Class to seek attorneys' fees in the Indirect Purchaser States where they allowed by law.  Plaintiff and the Class seek attorneys' fees where they are allowed by law.

## COUNT III

### Violation of State Consumer Protection Statutes

73.    Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect, as if fully restated herein.

74.    The deceptive practices of the Defendants as alleged above included but are not limited to collusion between Defendants in setting prices and actual price fixing with the intended purpose to maintain supra-competitive pricing for CRT prices charged for consumer products containing CRTs (all unknown to the general consumer public).  Defendants' deceptive

and anti-competitive conduct resulted in higher consumer prices for CRT prices charged for consumer products containing CRTs because of supra-competitive pricing by Defendants.

75.    Defendants' acts as described above are in violation of the following state consumer protection statutes:

76.    Defendants have violated Alaska Statutes § 45.50.471, *et seq.*

77.    Defendants have violated Arkansas Code § 4-88-101, *et seq.*

78.    Defendants have violated California Business & Professions Code § 17200, *et. seq.*

79.    Defendants have violated District of Columbia Code § 28-3901.

80.    Defendants have violated Florida Statutes § 501.201.

81.    Defendants have violated Idaho Code § 48-601.

82.    Defendants have violated Maine Revised Statutes, Title 5 § 207, *et seq.*

83.    Defendants have violated Montana Code § 30-14-101, *et seq.*

84.    Defendants have violated Nebraska Revised Statutes § 59-1601, *et seq.*

85.    Defendants have violated Nevada Revised Statutes § 598.0903, *et seq.*

86.    Defendants have violated New York General Business Law § 349, *et. seq.*

87.    Defendants have violated New Hampshire Revised Statutes § 358-A:1, *et seq.*

88.    Defendants have violated New Mexico Statutes § 57-12-1, *et. seq.*

89.    Defendants have violated North Carolina General Statutes § 75-1.1, *et. seq*

90.    Defendants have violated Utah Code § 13-11-1, *et. seq.*

91.    Defendants have violated Vermont Statutes, Title 9, § 2451, *et. seq.*

92.    Defendants have violated West Virginia Code § 46A-6-101, *et seq.*

93.    Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

94.    Plaintiff and the Class seek attorneys' fees due to Defendants' willful and unlawful conduct in the Consumer Fraud States where allowable by law.

## COUNT IV

### Unjust Enrichment

95.    Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

96.    Defendants benefited greatly from overpayments caused directly from their unlawful and anti-competitive acts as described above for supra-competitive prices for CRT prices charged for consumer products containing CRTs. It would be inequitable for Defendants to retain the benefit of these overpayments that were conferred by Plaintiff and the Class.

97.    Plaintiff and the Class are entitled to return of these overpayments caused by the willful acts of the Defendants either as damages or restitution.

## COUNT V

### Common Law Restraint of Trade for Class Members In State of New York Only

98.    Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

99.    Defendants have a vast majority of worldwide and New York market share of CRT.

100.    Defendants have maintained its monopoly in the State of New York over the CRT market through a series of purposeful and intentional acts since at least January 1, 2003.

101.    These intentional acts included but are not limited to artificially fixing, raising, maintaining, and stabilizing the prices paid by consumers for CRT contained in consumer products.

102.    The intentional and unlawful acts of Defendants were designed to and actually caused Defendants to artificially fix, raise, maintain, and stabilize prices of CRTs within the State of New York.

103.    As proximately and directly caused by Defendants' intentional and unlawful acts to restrain trade related to the CRT prices charged for consumer products containing CRTs, Plaintiffs had to pay supra-competitive prices for consumer products containing CRTs.

104.    Plaintiff and the Class seek actual damages in an amount to be determined at trial for injuries suffered as a result of the allegations stated herein.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class request as follows:

(a)    that this Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)    that this Court declare, adjudge, and decree that Defendants have committed violations of the Sherman Antitrust Act and the Clayton Act as alleged herein;

(c)    that this Court declare, adjudge, and decree that Defendants have committed violations of state antitrust and consumer protection laws alleged herein;

17

(d)    that this Court declare, adjudge, and decree that Defendants have committed violations of New York common law restraint of trade alleged herein;

(e)    that this Court award Plaintiff and the Class their actual damages for Defendants' restraint of trade or commerce pursuant to New York common law, in an amount to be determined at trial;

(f)    that this Court award Plaintiff and the Class treble damages for Defendants' violation of Indirect Purchaser States' antitrust laws in an amount to be determined at trial where they are allowed by law and actual damages where treble damages are not allowed by law;

(g)    that this Court award Plaintiff and the Class their actual damages for Defendants' violation of Consumer Protection Statutes, in an amount to be determined at trial;

(h)    that this Court grant Plaintiff and the Class the actual costs in prosecuting this action, together with interest and reasonable attorney's fees and costs;

(i)    that this Court award Plaintiff and the Class the return of overpayments made by them with respect to CRTs; and

(j)    that this Court grant such further and other relief as this Court deems just and proper.

DATED: New York, New York
         November 13, 2007

                                   LOVELL STEWART HALEBIAN LLP

                                   By:

                                   Christopher Lovell (CL-2595)
                                   Craig M. Essenmacher
                                   Keith Essenmacher
                                   500 Fifth Avenue, Floor 58
                                   New York, New York 10110
                                   (212) 608-1900

18

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Andrew Kindt on behalf of himself
and all others similarly situated
                 Plaintiff(s),

    -against-

Matsushita Electric Industrial Co., Ltd.
Samsung SDI Co., Ltd. LP Displays
International, Ltd. (formerly LG Philips Displays)
MT Picture Display Co, Ltd. Toshiba Corp.
Toshiba America, Inc.
                 Defendant(s).
------------------------------------------------------------X

07cv10322(GBD)
<u>INITIAL PRETRIAL</u>
<u>CONFERENCE</u>

TO:    The Attorney(s) for Plaintiff(s):

      This case has been designated an electronic case and has been assigned to this court for all purposes.  Counsel for all parties are required to promptly register as filing "USERS" in accordance with the procedure for Electronic Case Filing.

      Counsel for all parties are hereby directed to attend a conference at the time and place fixed below, for the purpose of Case Management and scheduling pursuant to Fed. R. Civ. P. 16.  You are directed to furnish  all attorneys in this action with copies of this order and enclosures, and to furnish chambers with a copy of any transmittal letter(s).  If you are unaware of the identity of counsel for any of the parties, you must forthwith send a copy of the notice and rules to that party personally.

      An Initial pretrial conference will be held on **Thursday, February 14, 2008 at 9:30 a.m.** at the United States District Courthouse, 500 Pearl Street, New York, New York, Courtroom 15D.

      No application for adjournment will be considered unless made within one week of the date of this application.

      Enclosed is a proposed Case Management Plan and Scheduling Order, pursuant to Rules 16 and 26 (f) of the Federal Rules of Civil Procedure.  Counsel for all parties are directed to confer regarding the proposed plan and order.  If the proposed schedule is agreeable to all parties, counsel shall sign and file the enclosed plan and order with the Court seven (7) days before the date of the initial pretrial conference. If counsel agrees that a different plan and schedule is appropriate, counsel shall sign and file a different proposed plan and schedule for the court's consideration seven (7) days before the date of the pretrial conference.  In the absence of agreement, the Court, after hearing from counsel, will order a Case Management Plan and schedule at the conference.  Absent extraordinary circumstances, the Plan shall provide that the case be ready for trial within six months.

      In addition to the matters covered in the Case Management Plan, counsel should also be prepared to address at the conference the factual and legal bases for their claims or defenses, any issue as to subject matter jurisdiction, and any other issue relevant to case management.

Dated: November 20, 2007
      New York, New York

                              SO ORDERED:

                              GEORGE B. DANIELS
                              United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: NOV 2 1 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
Andrew Kindt on behalf of himself
and all others similarly situated ,

                     Plaintiff,           07cv10322(GBD)

    -against-                     CIVIL CASE MANAGEMENT
                                              PLAN AND SCHEDULING ORDER

Matsushita Electric Industrial Co., Ltd.
Samsung SDI Co., Ltd. LP Displays
International, Ltd. (formerly LG Philips Displays)
MT Picture Display Co, Ltd. Toshiba Corp.
Toshiba America, Inc. ,

                     Defendant,
----------------------------------------------------X

      After consultation with counsel for the parties, the following Case Management Plan is
adopted.  This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal
Rules of Civil Procedure.

1.        No **additional parties** may be joined after **May 1, 2008**.

2.        No **amendment** to the pleadings will be permitted after **May 1, 2008**.

3.        Except for good cause shown, all **discovery** shall be commenced in time to be
completed by **June 5, 2008**.  The Court expects discovery to be completed
within 90 days of the first scheduling conference unless, after the expiration of
that 90 day period, all counsel stipulate that additional time (not to exceed 60
more days) is needed to completed discovery.  In such event, discovery may be
extended by the parties on consent, without application to the Court, provided
the parties are certain they can still meet the discovery completion date ordered
by the Court.  The discovery completion date shall not be adjourned except upon
*a showing of extraordinary circumstances*.

4.        **Dispositive motions** are to served by **September 4, 2008**.  Answering papers
are to be served within 14 days.  Reply papers  are to be served within seven (7)
days.  In the event a dispositive motion is made, the date for submitting the Joint
Pretrial Order shall be changed from that shown herein to three(3) weeks from
the decision on the motion.  The final pretrial conference shall be adjourned to a
date four (4) weeks from the decision on the motion.

5.        A final **pretrial conference** will be held on **October 2, 2008 at 9:30 a.m.**.

6.        The **Joint Pretrial Order** shall be filed no later than **September 11, 2008**.  The
requirements for the pretrial order and other pretrial submissions shall be
governed by the Court's Individual Rules of Practice.

7.        **All motions and applications** shall be governed by the Court's Individual Rules
of Practice.

8.  The parties shall be **ready for trial** on 48 hours notice on or after **October 9, 2008**.  The estimated trial time is _____ days, and this is a (jury) (non-jury) trial.

9.  The **Next Case Management Conference** will be held on **July 10, 2008 at 9:30 a.m.**.

Dated: November 20, 2007
       New York, New York

SO ORDERED:

_____
        GEORGE B. DANIELS
        United States District Judge

_____
Attorney for Plaintiff

_____
Attorney for Defendant

-2-

EXHIBIT 3

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: CATHODE RAY TUBE (CRT)   )
ANTITRUST LITIGATION          )     MDL No._____
                              )

---

**PLAINTIFF CRAGO, INC.'S NOTICE OF MOTION AND MOTION FOR
TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT
OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR
CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant 28 U.S.C. § 1407, Crago, Inc. (hereinafter "Crago" or "Plaintiff")
hereby moves for the Judicial Panel on Multidistrict Litigation to transfer all actions
asserting claims arising from anticompetitive conduct by the manufacturers of cathode
ray tube ("CRT") products, for consolidated pretrial proceedings in the Northern
District of California.

As set forth in further detail in Plaintiff's Memorandum of Points and
Authorities, consolidated proceedings in the Northern District of California are
appropriate under 28 U.S.C. § 1407 (a) because:

1.    Actions have been filed in the Northern District of California and
Southern District of New York alleging substantially similar factual claims arising out
of defendants' conspiracy to fix, raise, maintain, and/or stabilize the price of CRT
Products in the United States;

2.    The centralization of these actions in a single judicial district for
consolidated pretrial proceedings is in the interests of justice, is most convenient for

the parties and will allow a single court to determine the common factual and legal issues in these actions; and

3.    The Northern District of California is the best forum for the centralization of these actions because (a) its judiciary is equipped to handle the consolidated action, and (b) it is the most convenient forum to conduct this litigation.

This motion shall be based on the supporting Memorandum, all other papers in the Judicial Panel's file in this proceeding, and all such oral and documentary evidence as the Judicial Panel may entertain.

DATED:  November 26, 2007

By: _____
Bruce L. Simon
Esther L. Klisura
PEARSON, SIMON, SOTER,
    WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:       (415) 433-9000
Facsimile:  (415) 433-9008

Clifford H. Pearson
Gary S. Soter
Daniel L. Warshaw
PEARSON, SIMON, SOTER,
    WARSHAW & PENNY, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

P. John Brady
Daniel D. Owen
SHUGHART THOMSON &
    KILROY, P.C.
Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, Missouri 64105
Telephone: (816) 421-3355
Facsimile:  (816) 374-0509

*Attorneys for Plaintiff and the Proposed Direct Purchaser Class*

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: CATHODE RAY TUBE (CRT)  )
ANTITRUST LITIGATION            )         MDL No._____
                               )
_____)

### PLAINTIFF CRAGO. INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS

## I. INTRODUCTION

As of the date of this motion, class action lawsuits have been filed in the Northern District of California and the Southern District of New York, alleging that the leading manufacturers and producers of cathode ray tube ("CRT") products (hereinafter "Defendants") have engaged in anticompetitive conduct. These lawsuits arise out of a common nucleus of operative facts and contain substantially similar factual allegations that Defendants have conspired to raise, fix, maintain and stabilize the price of CRT Products at supracompetitive levels.

Consolidation of the these related antitrust actions in the Northern District of California by the judicial panel is appropriate under 28 U.S.C. § 1407 for the following reasons: (1) the actions involve numerous common questions of fact; (2) consolidation of the actions will be convenient for the parties and witnesses; and (3) consolidation of the actions will promote the just and efficient conduct of the litigation. Furthermore, the Northern District of California is best suited to conduct

this litigation because it is the judicial district most likely to serve the interests of the parties and promote the just and efficient conduct of this litigation. *See* 28 U.S.C. § 1407.

## II. STATEMENT OF FACTS

Cathode ray tubes ("CRTs") are contained in many electronic display products, including but not limited to, televisions, computer monitors, oscilloscopes, air traffic control monitors, and ATMs (hereinafter "CRT Products"). In November of 2007, antitrust enforcement authorities from around the world, including the United States, the European Commission, and Japan, conducted raids and served subpoenas on some of the leading CRT Product manufacturers.

Moving party, Crago, Inc., has filed an antitrust class action on behalf of *direct* purchasers of CRT Products in the Northern District of California. Plaintiff Andrew Kindt has filed a class action on behalf of *indirect* purchasers of CRT Products in the Southern District of New York. Both class actions seek to remedy harm inflicted upon the CRT market by Defendants' anticompetitive conduct. These two cases contain substantially similar allegations that CRT manufacturers have conspired to raise, fix, maintain, and stabilize the prices of CRT Products at anticompetitive levels. The cases name some common Defendants, including Matsushita Electrical Industrial Co., Ltd., Samsung SDI Co., Ltd., LP Displays International, Ltd., Toshiba Corp., and Toshiba America, Inc. The notable differences are that the direct purchaser complaint filed in the Northern District of California has a longer class period and names more defendants than the indirect purchaser complaint.

Given the large size of the CRT market and the number of persons and entities affected by the alleged wrongful conduct, Plaintiff Crago, Inc. believes additional similar cases are likely to be filed in the coming weeks.

/ / /

## III. ARGUMENT

**A.    Transfer of the CRT Antitrust Lawsuits for Coordination and Consolidation is Appropriate Under 28 U.S.C. § 1407**

28 U.S.C. § 1407 (a), permits the Panel to transfer "civil actions involving one or more common questions of fact" to a single district "for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions." Here, the Panel should transfer and consolidate these cases in a single district because: (1) the actions involve numerous common questions of fact; (2) consolidation will convenience the parties and witnesses; and (3) consolidation will promote the just and efficient conduct of such actions.

1.    <u>These Actions Involve Multiple Common Questions of Fact</u>

These cases arise out of the same nucleus of operative facts and share multiple common questions of fact. Namely, each of these cases asserts that the manufacturers of CRT Products conspired to artificially fix, maintain, raise, and stabilize the price of CRT Products sold in the United States. The common questions of fact in these cases include but are not limited to:

    a.    Whether Defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of CRT Products sold in the United States;

    b.    Whether Defendants engaged in secret meetings wherein they agreed to set, increase, or maintain the prices of CRT Products;

    c.    Whether Defendants made false and misleading statements concerning the reasons for the anticompetitive pricing of the CRT Products in order to conceal the existence of the conspiracy and mislead the putative class;

    d.    The identity of the participants in the alleged conspiracy;

    e.    The length, extent, and duration of the alleged conspiracy; and

      f.     Whether Defendants' conduct caused the prices of CRT Products sold in the United States to be at artificially high and noncompetitive levels.

These common issues of fact give the Judicial Panel the authority to order the transfer, consolidation and coordination of these actions to a single judicial district. *See e.g., In re Cement and Concrete Antitrust Litig.*, 437 F. Supp. 750 (J.P.M.L. 1977) (ordering transfer and consolidation of cases upon a finding of common questions of fact concerning the existence and scope of an antitrust conspiracy.) It is unlikely that any party will dispute that coordination is appropriate.

    2.    <u>Consolidation in a Single Judicial District Will Convenience the Parties and Witnesses in the Related Cases</u>

Without transfer and consolidation of these cases, the Northern District of California and the Southern District of New York will each have to make separate inquiries into a substantially similar set of facts involving substantially similar parties and witnesses. These overlapping factual inquiries will undoubtedly inconvenience the parties and the witnesses as they will be forced to make multiple appearances in both California and New York to resolve the same issues. Maintaining the actions in a separate district is also likely to confuse the parties and witnesses who may be subjected to multiple rulings and protocols regarding the same factual and legal issues. Under these circumstances, coordination and consolidation of these cases into a single judicial district will convenience the parties by: (1) streamlining discovery; (2) preventing duplicative discovery requests and depositions; (3) preventing duplicative court appearances; and (4) sparing the parties and witnesses the expense and inconvenience of participating in litigation in New York, San Francisco, or other judicial districts where subsequent related actions may be filed.

3.  <u>Consolidation will Promote the Just and Efficient Conduct of the Related Cases</u>

Similarly, consolidation will promote the just and efficient conduct of these cases by preventing a multiple judicial inquiries into a common set of underlying facts. This will in turn promote efficiency by sparing the judiciary, the parties, and witnesses the burden of expending valuable time and resources conducting duplicative discovery and resolving common questions of fact. Furthermore, transfer and consolidation of the actions in a single district is also in the interest of justice because it will prevent the possibility of multiple inconsistent rulings on the common factual and legal issues in the related cases.

**B.  These Actions Should be Consolidated in the Northern District of California**

In choosing the district to locate the consolidated action the Panel considers which judicial district is best suited to promote the purpose of 28 U.S.C. § 1407 in ensuring convenience of the parties and the just and efficient conduct of the litigation. In this case, each of these considerations favor transfer of these cases to the Northern District of California because: (1) it is the most convenient forum for the parties and witnesses in this matter; and (2) it has the judicial resources and expertise to efficiently and judiciously conduct this antitrust litigation.

The Northern District of California's ability to accommodate the parties and witnesses in this case makes it the most convenient forum for conducting this litigation. The Northern District of California is a more convenient forum compared to the Southern District of New York because it is much closer to Japan, South Korea, and Taiwan, where a number of the Defendants and witnesses in this case reside. San Francisco International Airport has a number of daily non-stop flights to East Asia which will make travel to and from the proceedings in this case more convenient for the parties in this case. The Northern District of California is also the most convenient

forum for the American defendants named in this litigation such as Hitachi America, Ltd. – which has its principal place of business in Brisbane, California – and Samsung SDI Co., Ltd. – which has its principal place of business in the Irvine, California.

Furthermore, Plaintiff Crago, Inc. is informed and believes that an investigation into the alleged CRT price-fixing conspiracy is being conducted by the DOJ's Antitrust Division in the Northern District of California. Accordingly, any grand jury investigation into Defendants' anticompetitive conduct in the CRT industry, would most likely be empanelled in that district. Any documents submitted by Defendants to the grand jury would be located there as well.

The Northern District of California has substantial experience in conducting numerous consolidated antitrust class actions in the technology industry. *See eg. In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (MDL No. 1486), *In re Static Random Access Memory (SRAM) Antitrust Litigation* (MDL No. 1819 ), and *In Re TFT-LCD (Flat Panel) Antitrust Litigation* (MDL No. 1827). The Northern District of California also has a lighter aggregate total of consolidated MDL cases pending in the Southern District of New York. Furthermore, Judge Samuel Conti, the judge assigned to the direct purchaser case filed in the Northern District of California, is a Senior Judge with extensive experience in managing complex cases.

## IV.  CONCLUSION

For the aforementioned reasons, Plaintiff Crago, Inc. respectfully requests that the Judicial Panel order the consolidation of these apparently related antitrust class actions in the Northern District of California under 28 U.S.C. § 1407, "for the

/ / /

/ / /

/ / /

convenience of parties and witnesses and to promote the just and efficient conduct of such actions."

DATED:  November 26, 2007

By: _Bruce Simon by BWPeng_

Bruce L. Simon
Esther L. Klisura
PEARSON, SIMON, SOTER,
   WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:      (415) 433-9000
Facsimile:  (415) 433-9008

Clifford H. Pearson
Gary S. Soter
Daniel L. Warshaw
PEARSON, SIMON, SOTER,
   WARSHAW & PENNY, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

P. John Brady
Daniel D. Owen
SHUGHART THOMSON &
   KILROY, P.C.
Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, Missouri 64105
Telephone: (816) 421-3355
Facsimile:  (816) 374-0509

*Attorneys  for  Plaintiff  and  the
Proposed Direct Purchaser Class*

EXHIBIT 4

## SCHEDULE OF CRT-RELATED ACTIONS

*Andrew Kindt v. Matsushita Electric Industrial Co., Ltd., et al.*, No. 07-cv-10322-GBD (S.D.N.Y. filed Nov. 9, 2007)

*Arch Electronics, Inc. v. LG Electronics, Inc., et al.*, No. 07-cv-10664-GBD (S.D.N.Y. filed Nov. 29, 2007)

*Art's TV & Appliance v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-06416-SC (N.D. Cal. filed Dec. 19, 2007)

*Benson v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-cv-00011 (E.D. Tenn. filed Jan. 14, 2008)

*Caldwell v. Matsushita Electric Industrial Co., Ltd., et al.*, No. 07-cv-06303-SC (N.D. Cal. filed Dec. 13, 2007)

*Carroll Cut-Rate Furniture v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-cv-00309-SC (N.D. Cal. filed Jan. 16, 2008)

*Cook v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-cv-05013-JLH (W.D. Ark. filed Jan. 11, 2008)

*Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-05944-SC (N.D. Cal. filed Nov. 26, 2007)

*Electronic Design Company v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-cv-00614-JL (N.D. Cal. filed Jan. 25, 2008)

*Figone v. LG Electronics, Inc., et al.*, No. 07-cv-06331-SC (N.D. Cal. filed Dec. 13, 2007)

*Glanz v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-04175-TLW-TER (D.S.C. filed Dec. 31, 2007)

*Hawel v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-06279-SC (N.D. Cal. filed Dec. 12, 2007)

*Industrial Computing, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-11203-GBD (S.D.N.Y. filed Dec. 13, 2007)

*Juetten, et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-06225-SC (N.D. Cal. filed Dec. 10, 2007)

*Kushner, et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-cv-00160-MJD-AJB (D. Minn. filed Jan. 16, 2008)

*Luscher, et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-cv-00055-FJM (D. Ariz. filed Jan. 10, 2008)

*Meijer, Inc. and Meijer Distribution, Inc. v. LG Electronics, Inc., et al.*, No. 07-cv-10674-GBD (S.D.N.Y. filed Nov. 29, 2007)

*Monikraft, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-06433-SC (N.D. Cal. filed Dec. 21, 2007)

*Nathan Muchnick, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-05981-SC (N.D. Cal. filed Nov. 27, 2007)

*OK TV & Appliances, LLC v. Samsung Electronics Co., Ltd., et al.,* No. 08-cv-00086-JAG-MCA (D.N.J. filed Jan. 7, 2008)

*Orion Home Systems, LLC v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-cv-00178-SC (N.D. Cal. filed Jan. 10, 2008)

*Patrick v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-cv-00662-JSW (N.D. Cal. filed Jan. 28, 2008)

*Pierce v. Beijing-Matsushita Color CRT Company, Ltd., et al.,* No. 08-cv-00337-MMC (N.D. Cal. filed Jan. 17, 2008)

*Princeton Display Technologies, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-05713-SRC-MAS (D.N.J. filed Nov. 29, 2007)

*Radio & TV Equipment, Inc. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-cv-00542-JAG-MCA (D.N.J. filed Jan. 28, 2008)

*Royal Data Services, Inc. v. Samsung Electronics Co., Ltd., et al.,* No. 08-cv-00039-JAG-MCA (D.N.J. filed Jan. 2, 2008)

*Slagle v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-cv-00005-wks (D. Vt. filed Jan. 9, 2008)

*Sound Investments Corporation v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-cv-00543-JAG-MCA (D.N.J. filed Jan. 28, 2008)

*Southern Office Supply, Inc. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-cv-00062-DCN (N.D. Ohio filed Jan. 10, 2008)

*Univisions-Crimson Holding, Inc., et al. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-cv-00494-SC (N.D. Cal. filed Jan. 23, 2008)

*Wettstein and Sons, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 07-cv-04889-MJD-AJB (D. Minn. filed Dec. 18, 2007)

EXHIBIT 5

**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

-------------------------------------------------------------X
                                                             :
IN RE:                                                       :
                                                             :
CATHODE RAY TUBE                                             :        MDL DOCKET NO. 1917
ANTITRUST LITIGATION                                         :
                                                             :
-------------------------------------------------------------X

**PLAINTIFF ANDREW KINDT'S RESPONSE AND COUNTER MOTION TO**
**TRANSFER AND CONSOLIDATE RELATED ANTITRUST ACTION TO**
**SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. SECTION**
**1407**

Plaintiff Andrew Kindt respectfully moves the Judicial Panel on Multidistrict

Litigation for an order, pursuant to 28 U.S.C. Section 1407; (1) transferring one putative

class action pending in the United States District Court for the Northern District of

California, as well as any cases that may be subsequently filed asserting similar or related

claims, to the United States District Court for Southern New York; (2) consolidating

these proceedings with any other actions that are currently pending in the Southern

District of New York. In support of his motion for Transfer and Consolidation, the

Plaintiff states as follows:

1.      The action for which transfer and consolidation are proposed arises out of the same conduct and alleges virtually identical conduct. All actions are brought on behalf of direct and indirect purchasers of Cathode Ray Tubes ("CRTs") used in consumer products, and allege that the Defendants, their predecessors, or controlled subsidiaries, and/or affiliates, agents, and/or brokers conspired to fix raise maintain and/or stabilize the prices of CRTs throughout the United States and worldwide.

2.      Plaintiff Andrew Kindt ("Kindt") proposes that the one action pending outside of the Southern District of New York and any further actions filed be transferred to the Southern District of New York and consolidated with the first-filed action currently pending therein.

3.      The actions arise out of the same common core of factual allegations. They allege that the Defendants and their co-conspirators engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices in the United States, thus damaging direct purchasers and indirect purchasers, who purchased a consumer product with a CRT during the relevant time period.

4.      The centralization of these actions in a single judicial district for consolidated pretrial procedures will promote the just and efficient conduct of these actions, will serve the convenience of all parties and witnesses, and will promote the interests of justice because all of the actions have a common factual and legal issues, including;

          i.      whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain, manipulate or stabilize the prices of, or allocate the market for, sales of CRTs;

ii.      whether the combination or conspiracy caused CRT prices to be higher than they would have been absent the Defendants' conduct;

iii.     the time period of Defendants' combination or conspiracy;

iv.     whether the Defendants' alleged conduct caused injury to the business or property of Plaintiff and the members of the Class;

v.      the appropriate measure of damages suffered by the Class;

vi.     whether Defendants' conduct violates Section 1 of the Sherman Act (15 USC Section 1), as alleged in Count I;

vii.    Whether the alleged conduct violated the Indirect Purchaser States laws concerning antitrust as alleged in Count II of this Complaint;

viii.   whether Defendants' conduct violates, unfair competition, and consumer protection laws of the other states as alleged below in Count III;

ix.     Whether Plaintiffs and the Class have a claim for unjust enrichment;

x.      Whether injunctive relief is necessary to stop future violations from occurring;

xi.     Whether contingent commissions created a conflict of interest with clients;

xii.    Whether Defendants concealed or failed to disclose the nature a amount of damages to clients in respect to contractual

3

duties; and

     xiii.    the appropriate nature of class-wide equitable relief.

5.    Consolidation of the actions before a single court will conserve judicial resources, reduce litigation costs, prevent potentially inconsistent pretrial rulings, eliminate duplicative discovery, and permit the cases to proceed to trial more efficiently.

6.    All actions are in the very early stages of litigation; no responsive pleadings have been filed, nor has any discovery been conducted.

7.    The proposed transfer and consolidation in the Southern District of New York will serve the convenience of parties and witnesses and will promote the just and efficient conduct of these actions because it is expected that plaintiff's counsel in each of the actions will take the discovery of the same witnesses and documents to prove the same conspiracy.

8.    One of the two cases currently on file was filed in the Southern District of New York. Kindt's Southern District New York action is the first-filed in the nation, and most of the Defendants have an office and conduct substantial business in the district. The Southern District of New York has the judicial resources and expertise to properly conduct this case, and the Court is conveniently located for all parties and witnesses.

9.    Plaintiff Kindt's motion is based on the accompanying memorandum of Law, the filed pleadings and papers, and other materials that may be presented to the Panel before or at the time of a hearing on this matter.

*Wherefore*, Kindt respectfully requests that the Panel order that the other pending actions, as well as any cases subsequently filed asserting related or similar claims, be

transferred to the Southern District of New York for consolidated and coordinated pretrial proceedings.

Dated: December 14, 2007

Respectfully submitted,

By: *Christopher Lovell*
Christopher Lovell
Craig Essenmacher
Keith Essenmacher
Lovell Stewart Halebian LLP
500 Fifth Avenue
New York, New York 10110
(212) 608-1900
*Attorneys for Plaintiff Andrew Kindt*

5

**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

```
-------------------------------------------------------X
                                                       :
IN RE:                                                 :
                                                       :
CATHODE RAY TUBE                                        :        MDL DOCKET NO. 1917
ANTITRUST LITIGATION                                   :
                                                       :
                                                       :
-------------------------------------------------------X
```

**PLAINTIFF ANDRES KINDT'S RESPONSE IN OPPOSITION TO MOTION FOR
CONSOLIDATION AND TRANSFER TO THE NORTHERN DISTRICT OF
CALIFORNIA, AND MEMORANDUM OF LAW URGING CONSOLIDATION AND
TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28
U.S.C. § 1407**

This litigation currently consists of two antitrust price-fixing actions listed on Schedule A annexed hereto, one in behalf of direct purchasers, and one in behalf of indirect purchasers, pending in two federal districts. Plaintiff Andrew Kindt (sometimes referred to herein as "Plaintiff") filed the first action nationally, which is pending in the Southern District of New York. No party opposes consolidation.

Pursuant to Rule 7.2 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation ("the Panel"), Plaintiff Crago, Inc. ("Crago") filed its motion to transfer all related

1

actions to the Northern District of California for consolidated pretrial proceedings under to 28 U.S.C. § 1407. Pursuant to Rule 7.2(c), Plaintiff hereby respectfully submits that the most appropriate district in which to coordinate or consolidate these cases is the Southern District of New York, and responds to and opposes Crago's motion requesting the Panel to transfer and consolidate the cases to the Northern District of California.

As Plaintiff demonstrates, these actions involve common questions of fact, and so warrant consolidation under §1407. Furthermore, centralization under § 1407 is necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judges in the two separate federal judicial districts in which the related actions have been filed. However, Plaintiff respectfully submits that the Northern District of California is the least appropriate forum for transfer and consolidation, as the Southern District of New York best serves the convenience of the parties and witnesses, and more suitably promotes the just and efficient conduct of this litigation.

## INTRODUCTION

Plaintiff is aware of the two antitrust actions listed on Schedule A filed in two judicial districts alleging a Cathode Ray Tube ("CRT") price-fixing conspiracy. Those actions are pending in the Southern District of New York and the Northern District of California.

Transfer of these related actions to one forum is essential, so that they may be coordinated or consolidated for pretrial proceedings. Plaintiff opposes the transfer and consolidation to the Northern District of California, due to many factors. First the Northern District of California has had in the last year alone, several MDL actions transferred to it, as

2

Plaintiff Crago, Inc. has stated. For example, In re SRAM, In Re Video cards, In Re TFT LCD, In Re DRAM, In Re Bextra and Celebrex, In Re Apple Ipod Nano, In Re International Air Transportation Surcharge, have all been recently transferred to the Northern District of California. Plaintiff contends that these multiple and complicated actions place undue burden on the Northern District's comparatively (and already) scarce resources. Plaintiff respectfully submits that the Panel should select the Southern District of New York as the transferee forum because it is centrally located, with an outstanding infrastructure, and ample accommodations.

The two cases allege common factual allegations arising from a national conspiracy among the defendants to fix the market prices for CRT, by way of a coordinated sales prices and collusion among the manufacturers. Plaintiffs bring their claims under Section 1 of the Sherman Act, 15 U.S.C. §1, Section 4 of the Clayton Act, 15 U.S.C. §15.

The two pending actions involve antitrust claims relating to manufacture and sales of CRT for use in consumer products against various Defendants, including MATSUSHITA ELECTRIC INDUSTRIAL Inc.; SAMSUNG SDI, LP DISPLAYS INC., MT    PICTURE DISPLAY INC., LG PHILIPS DISPLAYS INC., TOSHIBA CORP., TOSHIBA AMERICA INC., and other unnamed CRT manufacturers unknown to Plaintiff at the time of filing the original complaint. New defendants have surfaced between the time Plaintiff's complaint was filed and the filing of Crago's complaint.

## ARGUMENT

## THIS LITIGATION SHOULD BE TRANSFERRED AND COORDINATED UNDER 28 U.S.C.§1407

The Panel is authorized to transfer civil actions "involving one or more common

3

questions of fact [that] are pending in different districts" if the transfer furthers the "convenience of the parties and witnesses" and "promote[s] the just and efficient conduct of such actions." 28 U.S.C. §1407(a). The two antitrust actions listed on Schedule A satisfy these statutory requirements, and so should be transferred for coordinated proceedings. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, 398 F. Supp.2d 1356, 1358 (J.P.M.L. 2005) (same); *In re Jet Blue Airways Corp. Privacy Litigation*, 305 F. Supp.2d 1362, 1363 (J.P.M.L. 2004) (same). There can be no good faith dispute that transfer and consolidation of this litigation is appropriate.

Transfer and consolidation of the actions to one forum is particularly advantageous in multiple Defendant class actions. Because of the complexity and enormity of this action, one transferee Court is greatly preferred by all parties. The transfer and consolidation into one Court allows for consistent rulings of the often complex and difficult issues raised by these cases -- e.g., through motions to dismiss, motions for summary judgment, other dispositive motions, and motions for class certification - - are handled in a consistent manner that will protect both plaintiffs and defendants from conflicting judgments by different district courts. *See e.g., In re Intel Corp. Microprocessor Antitrust Litigation*, 403 F. Supp.2d 1356, 1357 (J.P.M.L. 2005)(transfer under 28 U.S.C. § 1407 is necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties[.]); *In re Hypodermic Products Antitrust Litigation*, 408 F. Supp.2d 1356, 1357 (J.P.M.L. 2005)(same); *In re Sugar Industry Antitrust Litigation*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975)("[T]ransfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exist.").

4

## THE SOUTHERN DISTRICT OF NEW YORK IS BY FAR THE MOST APPROPRIATE TRANSFEREE FORUM FOR THIS LITIGATION

Plaintiff Kindt respectfully opposes Crago's motion to transfer this litigation to the Northern District of California. As already noted, that district has several very large and complex MDL antitrust actions that have been transferred in the last year, and adding yet another complex multi-defendant antitrust action would further strain the District's scarce (18 Judges and 11 Magistrate Judges) judicial resources. Plaintiff Kindt respectfully submits that the Southern District of New York (42 Judges and 15 Magistrate Judges), which has extensive experience in the management of complex multidistrict litigation, and ample room on its docket for these actions, and is the far superior choice for transfer and consolidation.

The argument by Crago, Inc. that more Defendants were listed in its complaint and it has a longer class period is not a particularly accurate assessment of the situation. At the time of the filing of Kindt's complaint those Defendants listed were the only one being investigated. Then subsequently after the filing of the Kindt's complaint new Defendant allegations arose. The same situation holds true for the longer class period from between the time of the first filing (Kindt) and the next complaint (Crago) filed two weeks later.

The Southern District of New York is an appropriate forum based upon its location in a major metropolitan center. This translates into no hardship in transportation for parties, witnesses, and experts. Additionally, the shipping and storage of documents, discovery materials, and the like will cost less, than if the Court were not more centrally located. Another district or a less central location, will escalate dramatically the costs of this litigation and reduce any recovery for the class itself. That result is contrary to the purpose of class actions, which are

5

designed to make the interests of the class the first priority. Moreover, the Northern District of California recently has been assigned by the Panel a multitude of new actions, such as In Re Video Cards, In Re LCD, In Re Sram, In Re DRAM, and others previously mentioned. These MDL actions have been started a short time ago, are not near resolution at the present time, and undeniably will place a burden on that District's congested docket.

**Defendants' Location, and Other Contacts with New York, Support Transfer to the**

**Southern District of New York**

The Defendants are located and conduct business throughout the Southern District of New York, New Jersey, and in multiple States. The current Defendants have their corporate headquarters at the addresses listed below.

a. Defendant MATSUSHITA ELECTRIC INDUSTRIAL INC. is located at 1006 Oaza Kadoma-shi, Kadoma, OSK 571-8501 Japan.

b. Defendant SAMSUNG SDI Consumer Electronics division is located at 105 Challenger Rd. Ridgefield Park, NJ 07660, U.S.A

c. Defendant LP DISPLAYS INC., formerly LG.Philips Displays Is located at 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong

d. Defendant MT PICTURE DISPLAY INC., Is a joint venture between Toshiba and Matsushita Electric Industrial

e. Defendant TOSHIBA CORP., Is located at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001 Japan.

f.  Defendant TOSHIBA AMERICA CORP., is located at 1251 Avenue of the Americas, Suite 4110, New York, NY.

There are several of the Defendants located in the Eastern half of the United States. The geographic central point is near the Southern District of New York. This opposition requests transfer of these actions to the district most centrally located, and therefore does not create undue hardship and burden on the parties due to travel, coordination of discovery, convenience of the witnesses, and the many other factors discussed below.

### Plaintiffs' Location Does Not Disfavor the Southern District of New York as the Transferee District

The Plaintiffs and class members are located throughout the entire United States and, due to Plaintiffs' discovery obligations, Plaintiffs' locations do not disfavor transfer to the Southern District of New York. One of the actions is a Sherman Act Section One claim for direct purchasers, and the indirect purchaser action alleges violation of State antitrust and consumer protection laws throughout the United States. The first-filed plaintiff Kindt chose to bring his action in the Southern District of New York, and the class of plaintiffs will not be burdened by the transfer of the action to the Southern District of New York.

### No Other Judicial District Has A Majority Of Cases Filed There

The Panel routinely transfers multidistrict litigation to a forum wherein one or more actions is pending. *See, e.g., Vitamin C*, 416 F. Supp. 2d at 1353 (transferring actions to the Eastern District of New York, where one action was pending). Accordingly, the Panel generally

transfers the action to a forum that is most convenient for the Plaintiffs and Defendants in the action. In this case, the Southern District of New York is the most appropriate district because one Defendant has corporate headquarters there (Toshiba America). In addition, one of the other Defendants, SAMSUNG SDI Consumer Electronics division, is located close by, at 105 Challenger Rd. Ridgefield Park, New Jersey. The Southern District of New York thus provides the most centrally located venue for the Defendants and most of the Plaintiffs in this action. As such, the witnesses, documents, and other discovery materials will be more accessible in the Southern District of New York due to its central location.

Plaintiff Kindt was the first plaintiff to file in the nation and he chose to file in the Southern District of New York. *See In re Nigeria Charter Flights Contract Litigation*, 323 F. Supp.2d 1375, 1376 (J.P.M.L. 2004) (transferring cases to the Eastern District of New York, where five of eight actions already were pending); *In re Visa/Master Card Antitrust Litigation*, 295 F. Supp.2d 1379, 1389 (J.P.M.L. 2003) (transferring cases to the Eastern District of New York, where 4 of 6 actions already were pending); *In re Commercial Money Center, Inc., Equipment Lease Litigation*, 229 F. Supp.2d 1379, 1380 (J.P.M.L. 2002) (transferring cases to the district "where almost half of the constituent actions are already pending"). Since there is no district with a clear majority of actions filed in them, other factors will have to be taken into account. For the convenience of all parties, including Defendants, the Southern District of New York is the most convenient forum.

### The Southern District Of New York Has The Greatest Nexus To This Litigation

This litigation asserts antitrust violations arising from the pricing of CRT used in consumer products. The Southern District of New York has a consequential connection to the

subject matter of this litigation because one of the Defendants, TOSHIBA AMERICA CORP.,

maintains its headquarters at 1251 Avenue of the Americas, Suite 4110, New York, NY.

The Southern District of New York has a vast experience in consumer product antitrust

matters, and has superior knowledge in managing complex litigation. The other Defendants are

located throughout United States. New York is a centrally located for all the Defendants and has

a network of transportation infrastructure. New York has two international airports and a

regional airport with many direct flights going to and from various States and foreign countries.

The Defendants have a presence and conduct substantial business in the Southern District

of New York. The Defendants all manufacture and sell CRTs for use in consumer products

throughout the United States. The greatest percentage of the CRTs in the United States are sold

in the Eastern United States based on population and on the location of the Defendants'

corporate headquarters. Indeed, the most relevant defense witnesses likely will be Defendants'

employees involved in CRT manufacturing sales, marketing, and management, most of whom

are located in and around the Southern District of New York. Because the Defendants have both

more and significantly larger operations in the Southern District of New York compared to any

other District, the Southern District of New York has a vastly greater connection to the subject

matter of this litigation. Convenience of geographic accessibility to the Plaintiffs and Defendants

has been in the past a point of emphasis to the Panel. *In re Union Pacific Railroad Co.

Employment Practices Litigation*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (transferring to

the forum where witnesses and documents were located); *In re National Century Financial

Enterprises, Inc., Investment Litigation*, 293 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) ("many

parties, witnesses, and documents are likely to be found in that district"); *In re Unemployment

*Corp. Securities & "ERISA" Litigation*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) ("relevant witnesses and documents will likely be found there").

### The Southern District of New York Is the Most Convenient Forum for Non-Party Witnesses and the Collection of Evidence

The Southern District of New York thus is a more central location both geographically and financially, particularly with respect to the Defendants located in the Eastern United States. A majority of the Defendants are located in the Eastern United States. These facts demonstrate that the Defendants, their documents and data, and witnesses are more centrally located Southern District of New York.

### The Southern District Of New York Is Better Suited To Manage This Case, And The Court's Docket Does Not Disfavor the Southern District of New York

The Southern District of New York is a very central locale compared to the rest of the United States. It is the center of the Atlantic coast in the continental United States, while a number of the Defendants are headquartered in or near the District. Additionally, the district would easily accommodate the necessary travel and lodging required by all of the parties and counsel for court appearances and trials. The Southern District of New York has multiple international and regional airlines and airports, including a public transportation system and a multitude of hotel and business centers very close to the court. The Southern District of New York has the essential experience to manage its complex docket, including this antitrust action. Many past actions, including similar antitrust actions, have been filed and consolidated in the

Southern District of New York. The Southern District of New York has excelled in management of complex litigation, and would do a similar expedient job for the current actions.

## CONCLUSION

For the foregoing reasons, Plaintiff Kindt respectfully requests that the Panel enter an Order consolidating the CRT cases, together with any other similar actions subsequently filed or removed, and transferring the cases to the Southern District of New York for coordinated or consolidated pretrial proceedings. The Southern District of New York is more appropriate than the Northern District of California, because the Southern District of New York forum best serves the convenience of the parties and witnesses and possesses the requisite experience, capacity, and resources to manage this docket.

If the Panel determines that the Southern District of New York is not the most appropriate forum, Plaintiff respectfully requests that the litigation be transferred to the Eastern District of New York. A number of the Defendants have a New York presence and sell their products in that district.

Dated: New York, New York
      December 14, 2007

Respectfully submitted,

By:     *Christopher Lovell*
                     Christopher Lovell
                     Craig Essenmacher
                     Keith Essenmacher
                     **LOVELL STEWART HALEBIAN LLP**
                     500 Fifth Avenue
                     New York, New York 10110
                     (212) 608-1900
                     *Attorneys for Plaintiff Kindt*

11